IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiffs,<br><br> vs.<br><br>JACK OLSON,<br><br>    Defendant. | 4:23CR3051<br><br>**DETENTION ORDER** |

  Following the defendant's arraignment, the government moved for Defendant's detention, stating Defendant's release would pose a risk of harm to the public, nonappearance, and obstruction of justice. Based on the grand jury's findings, the court concluded Defendant's release would pose a serious risk of obstruction or attempted obstruction of justice, and of actual or attempted intimidation of witnesses. The court convened a hearing on the government's motion for detention. See 18 U.S.C. 3142(f)(2). Defendant was represented by his appointed counsel, and he was afforded the opportunity to cross-examine the government's witness, call his own witnesses, proffer information, and testify himself if he chose to do so. After considering the information presented, the court finds the defendant must be detained pending trial.

  A pretrial services report outlining Defendant's history and characteristics was prepared and received by the court. See 18 U.S.C. § 3142(g)(3). Based on that report, Defendant has lived in Omaha for the last five years. He owns a firearm, but it was removed from his home when it was searched. He has no significant physical or mental health issues. Prior to his incarceration, he used marijuana daily, and his criminal history includes offenses for Driving under the Influence. He has a passport, but he has not traveled outside the United States

for 30 years. If released, he would need to turn the passport over to Pretrial Services.

In addition to the information provided by pretrial services, the court must consider the nature and seriousness of the crime charged, the weight of the government's evidence, any facts indicating a risk of flight or obstruction of justice, and the nature and seriousness of the danger to the community or any person if the defendant is released. 18 U.S.C. § 3142(g)(1-2). The government presented substantial evidence on these issues. Based on the wire taps of record, the context of which was explained by the government's testifying agent, the court finds the following for the purposes of this detention hearing only:

Defendant was a fundraiser for police unions and entered into a contract with LPOA for fund-raising. Court Ex. 1, at pp. 53, 62. Defendant had an opiate addiction and was previously terminated by multiple fundraising organizations. Court Ex. 1, at p. 64. He used the alias Cody Jones when fundraising for the LPOA. When soliciting donors for LPOA, Defendant used a script which stated the funds collected were used for youth athletic programs, and the donor letter LPOA distributed stated that "every penny" of the sponsorship funds collected would be used for this purpose. Court Ex. 1, at pp. 51-52. In reality, no such programs existed, and Defendant personally received 80% of all donations he solicited for LPOA. Court Ex. 1, at pp. 59-60. Defendant paid no federal income taxes for the money received through LPOA donations. Court Ex. 1, at p. 61.

Defendant used the LPOA funds to drink, gamble, and go on trips, often with codefendant Richard Gonzalez. Court Ex. 1, at pp. 57, 82. With one donor, Defendant provided ad space in an LPOA publication in exchange for sex. Court Ex. 1, at p. 65. At the time his house was searched. Law enforcement found an unregistered firearm.

Defendant was under investigation for first degree sexual assault. About eight months after the alleged incident, a detective contacted Defendant and asked for a DNA sample. Court Ex. 1, at p. 109. Defendant requested guidance from codefendants Johnny Palermo and Gonzalez. Although Defendant admitted that he bit the alleged victim, Court Ex. 1, at p. 113, he told the investigating officer that the sexual encounter with the alleged victim was consensual. Court Ex. 1, at pp. 112-114. He also stated he had a lawyer—when he did not—to halt any questioning by the officer. He purchased a new cell phone with a new number to hide the contents of his phone from law enforcement.

Defendant received Texas De Brazil gift cards as donations to LPOA, and he used them himself or distributed a portion of them the Johnny Palermo and Gonzalez. Defendant, along with the codefendants and others, went on a trip to Las Vegas, using LPOA money to fund the trip. Court Ex. 1, at pp. 129-30, 135.

Based on the foregoing facts of record, the court finds, by clear and convincing evidence, that Defendant's release would pose a serious risk of harm to the public and obstruction of justice. Moreover, it is unlikely this defendant will follow conditions of release set forth in a court order.

The court has considered whether conditions of release, or a combination of such conditions, would sufficiently ameliorate the risk posed by Defendant's release. Defendant has a history of being untruthful with law enforcement, prior terminations of fundraising activity, and an opiate addiction. He used an alias when soliciting funds, and possessed an unregistered firearm. Where the fundraising was done by phone, restricting and/or monitoring the defendant's movements and prohibiting his access to other's funds will not sufficiently ameliorate the risk of harm to the public posed by Defendant's release—his

fundraising efforts could start anew upon release, from the privacy of his home. Defendant was able to surreptitiously commit criminal activity for five years using an alias and without the knowledge of the LPOA board members. This ability to conceal his true identity and actions casts serious doubt on whether pretrial services could reliably supervise him.

Moreover, Defendant committed his crimes using a cell phone—as evidenced by his act of replacing it before anyone could look at it. If released, Defendant could likewise gain access to a telephone, and perhaps email and social media, to contact witnesses and discourage them from cooperating with law enforcement and testifying. While the court could order that Defendant have no access to a phone, Defendant could nonetheless use others' phones or burner phones even when under the careful supervision of pretrial services. There are no conditions or combination of conditions that will provide a sufficient basis for trusting the Defendant to comply with a court order prohibiting future fundraising efforts and his contact with codefendants and witnesses to coach or orchestrate their testimony.

The court therefore finds, by clear and convincing evidence, that no conditions or combination of conditions of release would sufficiently lessen the risk of harm and of obstruction of justice posed by Defendant's release pending trial. Defendant will be detained.

Directions Regarding Detention

The defendant is committed to the custody of the Attorney General or a designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or held in custody pending appeal. The defendant must be afforded a reasonable

opportunity to consult privately with defense counsel. On order of the United States Court or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to the United States marshal for a court appearance.

Dated this 28th day of April, 2023.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge